IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br>NATIONAL RURAL UTILITIES<br>COOPERATIVE FINANCE<br>CORPORATION, et al., | ) Bankr. No. 06-10135(JKF)<br>)<br>)<br>) Adv. No. 10-50744(JKF)<br>) Adv. No. 09-52854(JKF)<br>) |
| JEFFREY PROSSER, et al.,<br><br>                    Appellants,<br><br>v.<br><br>NATIONAL RURAL UTILITIES<br>COOPERATIVE FINANCE<br>CORPORATION, et al.<br><br>                    Appellees. | )<br>)<br>) Civ. No. 12-155-SLR<br>)   Adv. No. 10-50744(JKF)<br>)   referred from Civ. No. 10-201-SLR (D. Del.)<br>)   referred from Civ. No. 08-107-JEJ (D.V.I.)<br>) Civ. No. 12-156-SLR<br>)   Adv. No. 09-52854(JKF)<br>)   referred from Civ. No. 09-111-SLR (D. Del.)<br>)<br>) |

**MEMORANDUM ORDER**

At Wilmington this ___ day of March, 2013, having reviewed the memorandum opinion[1] and order, construed as a report and recommendation, issued on December 15, 2011 by United States Bankruptcy Judge Judith K. Fitzgerald, as well as the appeal filed by appellants Jeffrey J. Prosser ("J. Prosser"), Dawn Prosser ("D. Prosser"), Adrian Prosser ("A. Prosser"), and John P. Raynor ("Raynor") (collectively, "the Prosser parties"), construed as objections thereto, and the response of appellees National Rural Utilities Cooperative Finance Corporation ("CFC"), Rural Telephone Finance Cooperative ("RTFC"), Steven L. Lilly ("Lilly"), John J. List ("List"), Sheldon C. Petersen ("Petersen"), R. Wayne Stratton ("Stratton"), Fulbright & Jaworski LLP ("Fulbright"),

---

[1]The memorandum opinion's footnote states, "[t]his memorandum opinion constitutes our findings of fact and conclusions of law." Adv. No. 09-52854(JKF) (D.I.180 at 2 n.3) and Adv. No. 10-50744(JFK) (D.I. 279 at 2 n.3)

Greenlight Capital, Inc. ("Greenlight Inc."), Greenlight Capital L.P. ("Greenlight L.P."), Greenlight Capital Qualified, L.P. ("Greenlight Qualified"), Greenlight Capital Offshore, Ltd. ("Greenlight Offshore"), Deloitte & Touche LLP ("Deloitte"), Ernst & Young LLP ("Ernst & Young"), National Rural Electric Cooperative Association ("NRECA"), and Glenn L. English ("English") (collectively "the CFC parties");

IT IS ORDERED that the report and recommendation: (1) for the grant of preliminary and permanent injunctions in Adv. No. 09-52854(JFK) is accepted and objections overruled; and (2) for the dismissal of the complaint in Adv. No. 10-50744(JFK) is accepted and objections overruled, for the reasons that follow:

1. **Background**.[2] The Prosser parties are plaintiffs in Adversary No. 10-50744 ("the RICO action") and defendants in Adversary No. 09-52854 ("the injunctive relief action") filed by the CFC parties. Most of the CFC parties are defendants in the RICO action. The CFC parties seek injunctive relief to enforce the terms of two general releases and to enjoin further litigation against the CFC parties by the Prosser parties that violates the releases.

2. The pending litigation arises from two sets of events. The first stems from a 1998 transaction wherein Innovative Communication Company, LLC, ("ICC-LLC")[3] took

---

[2]The background is taken from this court's previous findings and from those of the United States Bankruptcy Court for the District of Delaware ("bankruptcy court"). See Civ. No. 09-111-SLR (D. Del.) (D.I. 55); Adv. No. 09-52854-JKF (Bankr. D. Del.) (D.I. 180); Adv. No. 10-50744-JKF (Bankr. D. Del.) (D.I. 279).

[3]At all relevant times, ICC-LLC was the parent company of ECI; ECI was the parent company of Innovative Communication Corporation ("ICC"); ICC was in the business of furnishing telephone, cable television, and other communication services and facilities in and around the Caribbean, including the U.S. Virgin Islands.

2

Emerging Communications, Inc., ("ECI") private.[4] After the privatization transaction was complete, the Greenlight entities[5] sued ICC-LLC, J. Prosser, Raynor, ECI and others in the Delaware Court of Chancery for breach of fiduciary duty and sought, inter alia, appraisal of their shares. In June 2004, the Chancery Court entered judgments against J. Prosser and Raynor, having found them liable for breach of fiduciary duties ("the Greenlight judgments"). To date, the Greenlight judgments, with interest, total more than $160 million. ICC-LLC, ECI, and J. Prosser failed to pay the Greenlight judgments and, in February 2006, the Greenlight entities filed involuntary chapter 11 petitions against ICC-LLC, ECI, and J. Prosser in the United States Bankruptcy Court for the District of Delaware ("the Delaware bankruptcy proceedings"). Venue of the proceedings was transferred to the United States Bankruptcy Court for the District of the Virgin Islands ("V.I. bankruptcy court"). (See Adv. No. 09-52854(JKF) (D.I.180 at 5-6) and Adv. No. 10-50744(JFK) (D.I. 279 at 5-6))

3. The second set of events stems from loans made by RTFC to ICC between 1987 and 2001. At all relevant times, the Virgin Islands Telephone Corporation ("Vitelco") was the sole provider of local wired telephone services for the U.S. Virgin Islands and provided certain long-distance and related telecommunication services in the U.S. Virgin Islands. Vitelco was the largest and most significant source of revenue for ICC and related companies. Vitelco was a member of RTFC and RTFC made several loans to ICC (Vitelco's parent) totaling in excess of $500 million. In connection

---

[4]At the time, ICC owned 52 percent of ECI. It purchased ECI's publicly owned shares.

[5]Greenlight, Inc.; Greenlight L.P.; Greenlight Qualified; and Greenlight Offshore.

3

with the loans, RTFC obtained various guaranties and security interests from others, including ICC, ECI, and J. Prosser. In April 2003, RTFC and ICC negotiated amended loan agreements and, in connection therewith, RTFC obtained additional guaranties and security interests from, *inter alia*, ECI and J. Prosser. In 2004, RTFC sued ICC for defaulting under the amended loan agreement. ICC and Vitelco countersued CFC and RTFC. Protracted litigation ensued with CFC/RTFC, on one side, and J. Prosser, Raynor, and others on the other side. (*See id.* at 6-7)

4. By 2006, there were eight lawsuits pending in the United States District Court for the District of the Virgin Islands ("V.I. district court") between CFC and/or RTFC and J. Prosser and/or his companies. During the course of the RTFC loan default litigation, J. Prosser and his companies asserted claims against most of the CFC parties. The claims were premised on a core set of allegations, as follows: (1) that CFC unlawfully "controls" and "manipulates" RTFC; (2) that CFC and RTFC have engaged in a long-standing "scheme" to subsidize RTFC and to "misappropriate" RTFC's and its members' funds while interfering with ICC's ability to perform its loan obligations to RTFC; and (3) "retaliation" against J. Prosser and his companies as a result of J. Prosser's having discovered this "scheme." Vitelco and ICC also asserted claims against CFC, RTFC, and the Greenlight entities premised on some of these same allegations, along with allegations that the Greenlight entities' commencement of the Delaware bankruptcy proceeding was part of a "joint venture" between the Greenlight entities and RTFC to take over Vitelco and ICC. (*See id.* at 7)

5. In 2006, the two sets of events became intertwined through a series of settlement agreements. On April 26, 2006, the parties involved in the RTFC loan

default litigation and the Delaware bankruptcy proceedings executed the Terms and Conditions of Settlement of Claims of RTFC, CFC, Prosser parties, and Greenlight entities (the "Terms and Conditions"). In addition to the Terms and Conditions, two other agreements were executed: The release in full by the Prosser parties of RTFC, CFC, Lilly and List (the "RTFC release") and a release in full by the Prosser parties of the Greenlight entities (the "Greenlight release"). (*See id.*)

6. Pursuant to the Terms and Conditions, J. Prosser and his companies' claims in the RTFC loan default litigation were dismissed and a final judgment was entered, with ICC being adjudged liable for $524 million and J. Prosser being adjudged jointly and severally liable for up to $100 million of the RTFC judgment. All appeals of the Greenlight judgment were dismissed and, at the request of J. Prosser and his companies, the stay was lifted in the Delaware bankruptcy proceeding to allow implementation of the settlement. The Terms and Conditions provided that J. Prosser and his companies could discharge the RTFC and Greenlight judgments for a discounted payment if paid in full on or before July 31, 2006. If payment was not timely made, documents put into escrow by RTFC, CFC, and the Greenlight entities "as necessary to permit the Prosser parties to [make the discounted payment]" - mutual releases, discharges of liens, confidentiality agreements, etc. - would become void. J. Prosser and his companies did not make the discounted payment on July 31, 2006. Rather, J. Prosser, ICC-LLC, and ECI filed voluntary bankruptcy petitions in the V.I. bankruptcy court. (*See id.* at 8-9)

5

7. Despite the 2006 settlement, litigation followed, including an action to determine whether the Terms and Conditions constituted an assumable contract.[6] In April 2008, J. Prosser and Raynor sued CFC and others in the United States District Court for the District of Columbia based on allegations similar to those made in the RTFC loan default litigation. In April 2008, in the J. Prosser V.I. bankruptcy case, J. Prosser filed objections to claims made by RTFC and the Greenlight entities; the objections raised allegations similar to those made by Prosser in the RTFC loan default litigation. (*See id.* at 9-10)

8. On December 7, 2008, the Prosser parties filed the RICO action, *Prosser v. National Rural Utilities Cooperative Fin. Corp.*, Civ. No. 08-107-JEJ (D.V.I.), in the V.I. district court against the CFC parties, repeating the same or similar allegations as in the previous litigation. The V.I. district court granted a motion to refer the RICO action filed on the grounds that the RICO action was a collateral attack on four related bankruptcy cases pending in the V.I. bankruptcy court. The V.I. district court noted the forum selection clauses in the two general releases at issue applicable to the Prosser parties that identified the Delaware bankruptcy court as the forum in which "claims related to the releases must be brought." The V.I. district court then transferred the RICO action to this court and it was assigned Civ. No. 10-201-SLR. (*See Prosser v. National Rural Utilities Cooperative Fin. Corp.*, Civ. No. 08-107 (D.V.I., Dec. 8, 2009) (D.I. 176)

9. In the meantime, the CFC parties filed Civ. No. 09-111-SLR in this court. The CFC parties sought preliminary and permanent injunctive relief to enforce the terms of

---

[6]It is not assumable. *See In re Prosser*, 388 F. App'x 100 (3d Cir. 2010) (unpublished).

the RTFC and Greenlight releases and to enjoin further litigation against the CFC parties by the Prosser parties that violates the releases, including, but not limited to, the RICO action. Thereafter, this court referred the RICO action and preliminary injunction action to the bankruptcy court where they were assigned Adv. Nos. 10-50744 and 09-52854, respectively.

10. On December 15, 2011, the bankruptcy court issued a joint memorandum opinion and separate orders in the adversary proceedings, construed by the court as a report and recommendation. (Adv. No. 09-52854(JKF) (D.I. 180); Adv. No. 10-50744(JFK) (D.I. 279)) The court conducts a de novo review pursuant to 28 U.S.C. § 157(c)(1) of those parts of the report and recommendation to which the Prosser parties object.[7]

11. **Jurisdiction.** In the Prosser parties' objection, they assert that the bankruptcy court lacked subject matter jurisdiction to adjudicate the matters in dispute. (D.I. 15, ¶ V.1)[8] The objections are overruled. This objection is governed by the law of the case doctrine. See *Christianson v. Cold Industries Operating Corp.*, 486 U.S. 800, 816 (1988) (Under the law of the case doctrine, when a court "decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). This court previously determined it appropriate to refer related

---

[7]The Prosser parties filed identical objections in the related adversary proceedings. (D.I. 15) Objection 1 is directed to both adversary proceedings; objections 3, 6 and 7 are directed to Adv. No. 10-50744(JKF); and objections 2, 4, and 5 are directed to Adv. No. 09-52854(JKF).

[8]The Prosser parties' objections in Civ. Nos. 12-155-SLR and 12-156-SLR are found at D.I. 15 in both cases.

Adversary Proceeding Nos. 10-50744(JKF) and 09-52854(JKF) to the bankruptcy court. *See Prosser v. National Rural Utilities Coop. Fin. Corp.*, Civ. No. 10-201-SLR (D. Del.) (D.I. 213); *National Rural Utilities Coop. Fin. Corp. v. Prosser*, Civ. No. 09-111-SLR (D. Del.) (D.I. 55, 61).

12. **Preliminary injunctive relief**. Most, but not all, of the defendants in the RICO action filed Civ. No. 09-111-SLR wherein they seek to enjoin the RICO action. The complaint sought declaratory relief, specific performance, permanent injunctive relief, and compensatory damages. (Civ. No. 12-156 (D.I. 19) at ER1306) Thereafter, the CFC parties moved for a preliminary injunction and the issue was briefed by the parties. (*Id.* at ER1310, ER1315, ER1451, ER1478, ER1647, ER1655, 1804-17) Prior to referral to the bankruptcy court (Adv. No. 09-52854(JKF), a hearing was held before this court on May 1, 2009 on all pending motions and, on January 18, 2011, the bankruptcy court held a hearing on the pending motions for a preliminary injunction. (*Id.* at ER1547, ER1704)

13. In the Prosser parties' objection, they assert that the bankruptcy court erred as a matter of law by allowing the releases to preclude redress for illegal activity (when CFC allegedly filed false and misleading post-release documents with the SEC) (D.I. 15, ¶¶ V.4, 5). The bankruptcy court, in its memorandum opinion, notes that the Prosser parties assert no basis for standing to raise such claims. (Adv. No. 09-52854(JKF) (D.I.180 at n.31) and Adv. No. 10-50744(JFK) (D.I. 279 at n.31) The court agrees; the issues of the propriety (or lack thereof) of filings with the SEC, or the applicability of (or adherence to) generally accepted accounting principles have been

raised before and have been released. *See In re Prosser*, 388 F. App'x 100 (3d Cir. 2010) (unpublished).

14. In addition, the Prosser parties assert that the bankruptcy court erred in determining that the releases "by their terms apply to future conduct." (D.I. 15, ¶ V. 5) In this regard, the court agrees with the bankruptcy court that the release terms apply to future conduct. The Prosser parties' allegations in related Adv. No. 10-50744-JKF concern the same core facts and events that predate the releases (i.e., the 1998 privatization of ECI and loans made by RTFC to ICC between 1987 and 2001). (Adv. No. 09-52854(JKF) (D.I.180 at 14) and Adv. No. 10-50744(JFK) (D.I. 279 at 14)); *Cf. Camiolo v. State Farm Fire and Cas. Co.*, 334 F.3d 345, 362 (3d Cir. 2003) (where defendant knew that he was under investigation by the grand jury regarding certain conduct, the release applied to all future possible claims relating to such conduct). The court agrees with the bankruptcy court that the RICO action merely updated charges with more current, but related, events.[9] Therefore, the bankruptcy court committed no error in granting the CFC parties' motions for a preliminary injunction.

---

[9]The RTFC Release defines all claims to include any claim, "known or unknown, that the releasing parties have, or ever have had, or may in the future have, against the Released Parties and refers to the type of conduct alleged in the RICO action: "violations of local, state and/or federal statutes," "fraud," "intentional torts," "conspiracy," and "retaliatory conduct." (Civ. No. 12-156(SLR) (D.I. 19) at ER342-43 § 1.18) In addition, it includes conduct "occurring after the date of this release" that "involve[s] the same facts, events, transactions, occurrences, course of dealings and/or disputes existing as of the date of this release whether known or unknown arising out of the relationships or alleged relationships between or among the releasing parties and the released parties[.]" *Id.*

15. **Permanent injunctive relief.** In the Prosser parties' objection, they assert that the bankruptcy court erred as matter of law by denying them due process of law when it failed to provide notice of its intent to enter a permanent injunction. (D.I. 15, ¶ V.2) In addition to recommending grant of a preliminary injunction, the bankruptcy court's detailed memorandum opinion recommends the grant of a permanent injunction. Rule 65(a)(2) permits a court, on its own motion, to consolidate a hearing on an application for preliminary injunction with the trial of the action on the merits, provided that the parties are afforded sufficient notice, either before or after the commencement of the hearing, to enable them to present all of their evidence. *See Anderson v. Davila*, 125 F.3d 148, 157 (3d Cir. 1997); *Rennie v. Klein*, 653 F.2d 836, 841 (3d Cir.1981); *Fenstermacher v. Philadelphia Nt'l Bank*, 493 F.2d 333, 337 (3d Cir. 1974).

16. While a consolidation under Rule 65(a)(2) requires proper notice, the Prosser parties have not shown what prejudice will occur with the issuance of the permanent injunction at bar. *See Anderson v. Davila*, 125 F.3d at 157 (Although a district court's consolidation under Rule 65(a)(2) requires proper notice, a permanent injunction is not normally vacated if the party appealing the judgment is unable to show prejudice.). The bankruptcy court correctly determined that, because the CFC parties met their burden of proof as to the actual success on the merits of their claim, there is nothing to be gained from further proceedings, making the grant of permanent injunctive relief proper. In addition, the bankruptcy court properly found that the Prosser parties' releases of RTFC and Greenlight are clear and are all encompassing; that the RICO action that the Prosser parties seek to pursue is based only on those

10

claims and causes of action that were the subject of those releases; that imminent irreparable harm to the CFC parties will result if the Prosser parties are allowed to pursue further litigation with respect to released matters; that the balance of the equities favors injunctive relief; and that a party should not have to continually defend conduct that has been released.

17. Moreover, the bankruptcy court correctly determined that the Prosser parties are sophisticated litigants who entered into the RTFC and Greenlight releases with the advice of counsel. Indeed, the many actions that were settled, and for which the RTFC and Greenlight releases were issued, were terminated long ago. Finally, the bankruptcy court found permanent injunctive relief appropriate under the egregious circumstances of this case, given the Prosser parties' unwillingness to comply with the releases. Therefore, the permanent injunctive relief is granted.[10]

18. **Dismissal of the RICO action.** In the Prosser parties' objection, they assert that the bankruptcy court erred: (1) in treating the CFC parties' motions for injunctive relief, in the related adversary proceeding, as motions to dismiss the RICO

---

[10] The procedural posture at bar is far different from that presented in, e.g., In re Catholic Diocese of Wilmington, Inc., 484 B.R. 629 (D. Del. 2012), where the court reversed the entry of a permanent injunction by the bankruptcy court. More specifically, in Martin, injunctive relief was entered without the benefit of a formal motion and briefing practice and, despite the absence of such procedural protections, was very broad, extending to non-parties and into the future. By contrast, the litigation at bar was itself brought for the very purpose of seeking injunctive relief to enforce the terms of the RTFC and Greenlight releases, the culmination of prior protracted litigation between these parties. Given the bankruptcy court's findings that, as a matter of law, the Prosser partes are precluded from pursuing litigation against the CFC parties due to the releases, the kind of prejudice identified in, e.g., Anderson v. Davila, 125 F.3d at 158 (the government did not have a sufficient opportunity to conduct discovery or present evidence), does not exist.

11

complaint and, in doing so, utilized an inappropriate legal standard in dismissing the complaint; (2) in determining that all allegations in the RICO complaint relate to the same core facts and events that predate the releases; and (3) in not considering the motion for leave to file a second amended RICO complaint. (D.I. 15, ¶¶ V.3, 6, 7)

19. The court agrees with the findings of the bankruptcy court that the allegations in the RICO complaint all relate to the subject matter of prior litigation, the resolution of which resulted in the execution of the RTFC and Greenlight releases. The court further agrees that it was unnecessary for the bankruptcy court to consider the motion to amend given its finding that there is no basis upon which a RICO action can be brought due to the releases.

20. Finally, the court agrees that it is procedurally correct to consider that the disposition of the motions for preliminary injunction and permanent injunctive relief in related Adv. No. 09-52854-JFK, resolves the RICO action. A district court may *sua sponte* dismiss a complaint under Rule 12(b)(6) after service of process if the plaintiff is afforded an opportunity to respond. *See Oatess v. Sobolevitch*, 914 F.2d 428, 430 n.5 (3d Cir. 1990). *Sua sponte* dismissal may stand even if the plaintiff is not provided notice and an opportunity to respond where it is clear that the plaintiff cannot prevail and that any amendment would be futile. *Bethea v. Nation of Islam*, 248 F. App'x 331, 333 (3d Cir. 2007) (unpublished) (citing *Chute v. Walker*, 281 F.3d 314, 319 (1st Cir. 2002); *see Bryson v. Brand Insulations, Inc.*, 621 F.2d 556, 559 (3d Cir.1980) ("The district court may on its own initiative enter an order dismissing the action provided that the complaint affords a sufficient basis for the court's action."). In dismissing an action,

the court may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint when adjudicating a motion to dismiss under Rule 12(b)(6). *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citation omitted). Further, the court may also consider indisputably authentic documents. *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004).

21. The related adversary proceedings were heard together and the Prosser parties were given ample opportunity to present their positions to the bankruptcy court. The bankruptcy court properly relied upon the RICO complaint as well as all legal documents and related judicial proceedings. In doing so, the bankruptcy was correct in recommending dismissal of the RICO case because "there are no causes of action to pursue" that were not released by the Prosser parties. The bankruptcy court correctly determined that, because there is no basis upon which the RICO action can be brought due to the releases, the RICO action cannot lie and, therefore, it is appropriate to dismiss the RICO action

22. **Conclusion**. The bankruptcy court committed no error in recommending the imposition of a permanent injunction. Therefore, the court accepts the recommendation, and the motions for injunctive relief in Adv. No. 09-52854(JKF) (i.e, Civ. No. 09-111-SLR at D. I. 34 and 76) are granted. The Prosser parties are permanently enjoined from pursuing Adv. No. 10-50744(JKF) (i.e., Civ. No. 10-201-SLR) and any and all claims, causes of action and actions asserted therein or which would violate the RTFC and Greenlight releases. Consistent with the above, the

bankruptcy court committed no error in recommending that Adv. No. 10-50744(JKF) be dismissed with prejudice. The court accepts said recommendation; Adv. No. 10-50744(JKF) (i.e., Civ. No. 10-201-SLR) is dismissed with prejudice.

                                                                          _____
                                                                          United States District Judge